```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

LESLIE O. MONSON                              CIVIL ACTION

VERSUS                                        NO: 11-2716

JAZZ CASINO COMPANY, LLC                      SECTION: J(5)

### ORDER AND REASONS

Before the Court are Defendant Jazz Casino Company, LLC ("Harrah's")'s Motion to Dismiss **(Rec. Doc. 13)**, Plaintiff Leslie Monson's Memorandum in Opposition to same **(Rec. Doc 10)**, and Harrah's Reply Memorandum **(Rec. Doc. 6)**. In the motion, Harrah's seeks to dismiss counts one and three of Plaintiff's complaint. For reasons assigned herein, the Court hereby **GRANTS** the motion.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

Plaintiff Leslie Monson was first hired as an Advertising Manager for Harrah's in May 2007.[1] She maintained this position for approximately two years, at which point she accepted a position as Manager of Promotions, Special Events, and Total

---

[1] Complaint, Rec. Doc. 1, p. 3.

1

Rewards, the casino's customer loyalty program.[2]  In January 2010, Plaintiff learned she was pregnant.  Plaintiff alleges that she was reluctant to notify her supervisor, Vice President of Marketing, Sandie McNamara, that she was pregnant because she had allegedly once been told by an unnamed individual that "a woman cannot be an executive vice-president in the casino industry if [she has] a family."[3]  Nonetheless, she did subsequently notify McNamara of her pregnancy.  She also requested maternity leave, which was subsequently approved and scheduled from July 20, 2010, until September 24, 2010.[4]

During her maternity leave, Plaintiff alleges that she heard "through the grapevine" that Harrah's was implementing organizational changes in her department, and that as a result of the reorganization, a new position, Director of Marketing Services, would be created.[5]  Plaintiff also learned that the position would subsume the job responsibilities that she currently held as the Promotions, Special Events, and Total Rewards Manager.  Believing that she would be a natural

---

[2] Complaint, Rec. Doc. 1, p. 4.

[3] Complaint, Rec. Doc. 1, p. 4, ¶ XII.

[4] Complaint, Rec. Doc. 1, p. 4, ¶ XII.  Plaintiff's complaint states that her maternity leave was scheduled to last until September 24, 2011, which the Court assumes to be a typographical error.

[5] Complaint, Rec. Doc. 1, p. 6.

2

candidate for the position, Plaintiff was reportedly "excited" about her prospects for promotion.

On Friday, September 10, 2010, several days before she was set to return from maternity leave, Plaintiff scheduled a lunch with some of her co-workers on site at the Harrah's casino. During the lunch, Plaintiff alleges that her coworkers acted uncomfortable and avoided eye contact with her.  After the lunch was over, Plaintiff decided to stop by her office, where to her surprise, she found another individual, Dana Mueller, working at her desk.  It later came to light that, although Harrah's had not posted the position on its list of available jobs, it had hired Mueller for the position and had assigned her to work in the space that Plaintiff had previously used as an office.

The following Monday, Plaintiff submitted a letter of resignation to Harrah's stating that she had decided to pursue a new career opportunity.  A little over a year later, on November 1, 2011, Plaintiff filed the instant lawsuit, alleging that Harrah's discriminated against her on account of her pregnancy and/or maternity leave (1) by failing to post the position of Director of Marketing Services; (2) by failing to promote her to the vacant position; and (3) by constructively discharging her. Harrah's now moves to dismiss counts one and three of Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise and direct." FED R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.544, 547 (2007)). A claim is facially plausible when the plaintiff pleads the facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F. 3d 228, 232-33 (5th. Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

**DISCUSSION**

As previously noted, Harrah's seeks to dismiss Plaintiff's first and third cause of action. The Court will address each in

turn.

### A. Count One: Failure to Post the Position of Director of Marketing Services

Title VII of the 1964 Civil Rights Act makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  In 1978, Congress enacted the Pregnancy Discrimination Act ("PDA"), which amended Title VII to include discrimination based on pregnancy and pregnancy-related medical conditions within the definition of sex-based discrimination.  Stout v. Baxter Healthcare Corp., 282 F.3d 856, 859 (5th Cir. 2002).[6]

Plaintiff's first cause of action alleges that Harrah's intentionally discriminated against her on account of her pregnancy when it failed to post the available Director of Marketing Services position.  Claims of pregnancy discrimination are analyzed under the same standards used for discrimination

---

[6] See 42 U.S.C. § 2000e(k) ("The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work . . .").

5

claims in general.  Garcia v. Woman's Hosp. of Tex., 97 F.3d 810, 812-13 (5th Cir. 1996).  As such, a plaintiff must ultimately establish a prima facie case of discrimination by showing that she is (1) is a member of a protected group, (2) was qualified for the position at issue, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside the protected group.  McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).  However, the Supreme Court has clarified that the burden of making out a prima facie discrimination claim "is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002).  Thus, a plaintiff is not required to plead a prima facie case in order to survive a motion to dismiss.  Id. Still, a court may consider the McDonnell Douglas framework in assessing the sufficiency of a complaint, as no plaintiff is exempt from the obligation to "allege facts sufficient to state all the elements of her claim." See Puente v. Ridge, 324 F. App'x 423, 428 (5th Cir. 2009) (quoting (Mitchell v. Crescent River Port Pilots Ass'n, 265 F. App'x. 363, 370 (5th Cir. 2008).

Applying the foregoing standard to the facts alleged in Plaintiff's complaint, the Court agrees with Harrah's position that an employer's mere failure to post a job vacancy does not, in and of itself, give rise to an independent disparate treatment claim, for three reasons.  First, nothing in Title VII requires

6

an employer to advertise its job openings as a general matter. See Crowley v. Rockford Hous. Auth., 1 F. App'x 499, 500 (7th Cir. 2001) ("Title VII neither compels employers to advertise vacancies nor forbids them from singling out employees for unsolicited promotion.") (internal citations omitted); Gatewood v. Columbia Pub. Sch. Dist., 415 F. Supp. 2d 983, 997 (W.D. Mo. 2006) (noting that "the law generally does not require that promotional opportunities be posted").  Thus, on its face, Plaintiff's complaint fails to allege conduct actionable under the statute.

Second, Fifth Circuit precedent limits the types of adverse employment actions upon which Title VII discrimination claims can be based to "ultimate employment decisions," such as such as hiring, granting leave, discharging, promoting, or compensating." McCoy, 492 F.3d at 559.  Although an employer's refusal to promote an employee would certainly constitute an ultimate employment decision, the mere failure to provide information regarding a vacant position, on its own, does not. See, e.g., Newkirk v. AAA Chicago Motor Club, No. 01 C 615, 2003 WL 21518546, at *6 (N.D. Ill. July 2, 2003) ("A mere failure to provide information without any loss of actual or potential benefit simply does not constitute an adverse employment action under the law.").

Finally, if Harrah's *did* fail to post the Director of

7

Marketing position, as Plaintiff alleges, then Plaintiff received precisely the same treatment as every other Harrah's employee. A disparate treatment claim, as the name suggests, is premised on the fact that the plaintiff was subject to differential treatment based on her status as a member in a protected group. Guarino v. Potter, 102 F. App'x. 865, 868 (5th Cir. 2004) (noting that the "central focus" of a disparate treatment claim based on pregnancy discrimination is "whether an employer is treating employees less favorably because of their [pregnancy]"). Conversely, then, when a facially neutral policy has been evenhandedly applied to all employees, disparate treatment does not occur.

Here, Plaintiff does not allege that information regarding the Director of Marketing position was selectively withheld from her because she was pregnant. Rather, she concedes that "the job was not posted on the websites that Harrah's directed its employees to search for job availabilities."[7] Thus, all of Harrah's employees who have been interested in applying for the position were provided the same amount of information about its availability, regardless of whether they were pregnant, and as a result, no disparate treatment claim will lie based on the facts Plaintiff has alleged.[8]  See Dotson v. Delta Consol. Indus.,

---

[7] Plaintiff's Memorandum in Opposition, Rec. Doc. 10, p. 4.

[8] This same reasoning forecloses any claim Plaintiff may attempt to assert based on the fact that she was not *personally* notified of the availability of the position, despite the fact

Inc., 251 F.3d 780, 782 (8th Cir. 2001) ("The mere failure to post the opening in this instance cannot give rise to a reasonable inference that the failure was racially motivated . . . . All of Delta's employees, regardless of race, were supplied with the same amount of information about job openings, and in the same way."); Gatewood, 415 F. Supp. 2d at 997-98 (no racial discrimination occurred where employer's decision to appoint a particular individual without a formal vetting process "impacted all employees equally, including Caucasians who also may have been interested in applying for the position").  The Court therefore concludes that count one should be dismissed with prejudice, preserving Plaintiff's right to proceed on her failure to promote claim.

**B.   Count Three:   Constructive Discharge**

Plaintiff's third cause of action alleges that she was constructively discharged when she resigned from her job based on Harrah's discriminatory conduct.  "A resignation is actionable under Title VII . . . only if the resignation qualifies as a constructive discharge."  Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001).  In order to state a discrimination claim based on constructive discharge, an employee must allege

---

that other employees did not receive such notice, either.  The Fifth Circuit has held that the PDA does not require employers to provide pregnant women benefits not provided to other similarly situated employees.  Stout, 282 F.3d at 859-62.

facts showing "that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign.'" Ward v. Bechtel Corp., 102 F.3d 199, 202 (5th Cir. 1997) (quoting Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir. 1994)). This standard is purely objective. The question to be determined is not whether the particular plaintiff at issue felt compelled to resign, but whether a reasonable employee would have felt compelled to resign under the conditions alleged. Guthrie v. J.C. Penney Co., 803 F.2d 202, 207 (5th Cir. 1986).

Here, Harrah's argues that the allegations of Plaintiff's complaint are insufficient as a matter of law to demonstrate constructive discharge. The Court agrees. Even taking the allegations of Plaintiff's complaint as true, and drawing every reasonable inference in her favor, the Court nonetheless finds she has failed to allege that she was subject to working conditions so intolerable that a reasonable employee would feel compelled to resign, as required to maintain a constructive discharge claim.

Plaintiff's constructive discharge claim relies principally on Harrah's decision to hire another individual for the Director of Marketing position that she greatly desired. However, as the Fifth Circuit has explained, "constructive discharge cannot be based upon the employee's subjective preference for one position

over another." Jett v. Dallas Indep. Sch. Dist., 798 F.2d 748, 755 (5th Cir. 1986) (citation omitted). Furthermore, even if Harrah's failure to offer her the promotion was discriminatory, as Plaintiff contends, absent allegations of other aggravating factors, a discriminatory failure to promote is insufficient to maintain a claim for constructive discharge. Brown, 237 F.3d. at 566 ("Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote.") (citations omitted); Jurgens v. E.E.O.C., 903 F.2d 386, 392 (5th Cir. 1990) ("We find no support in the case law for the proposition that a simple discriminatory denial of promotion that cannot be reasonably construed as a career-ending action can alone create such embarrassment or humiliation that the denial comprises a constructive discharge.").

Included among the "aggravating factors" that may justify an employee's resignation are (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not. Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 331-32 (5th Cir.

2004) (citing Brown, 237 F.3d at 566); Jurgens, 903 F.2d at 393 n.10 ("Aggravating factors include hostile working conditions and any other evidence suggesting any invidious intent on the part of the employer in creating or perpetuating the intolerable conditions compelling retirement or resignation.") (internal citation omitted). These aggravating factors must demonstrate harassment of greater severity or more extensive pervasiveness than is required to demonstrate a hostile working environment. Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992).

Here, Plaintiff does not allege that Harrah's ever pressured her into accepting early retirement on unfavorable terms, reduced her salary, demoted her, reassigned her to a position involving menial or degrading work, or forced her to work under a younger supervisor. To the contrary, Plaintiff's own allegations reveal that she was offered a position with *greater* supervisory responsibilities less than a year before she resigned.[9] Plaintiff acknowledges that she was informed that this new position, which she accepted, "would be good for her career path" and would improve her chances of obtaining a position as a director at Harrah's.[10] Nor does Plaintiff allege that she was

---

[9] The complaint asserts that Plaintiff supervised 30 employees as Promotions, Special Events, and Total Rewards Manager. Before accepting this position, Plaintiff supervised only 5 employees. Complaint, Rec. Doc. 1, pp. 3-4, ¶¶ VII, X.

[10] Complaint, Rec. Doc. 1, p. 4, ¶ IX.

ever badgered, harassed, or humiliated by her employer.[11] Instead, her complaint confirms that her employment status remained essentially unchanged after she notified Harrah's of her pregnancy and request for maternity leave[12] and that she even received an exemplary job performance evaluation from her supervisors immediately prior to her maternity leave.[13]

The only other "aggravating factors" Plaintiff even arguably alleges are (1) that an unnamed individual once told her that she could not be an executive vice-president in the casino industry if she had a family; (2) that her co-workers and/or supervisors appeared to be avoiding eye contact at the September 10, 2010 lunch event at the Harrah's casino; and (3) that her supervisor could not adequately explain why another individual, Dana Mueller, was working in her previously assigned office space. Even taken in the aggregate, as a matter of law, these

---

[11] The only "humiliation" Plaintiff alleges occurred as a result of being passed over for the promotion, which is not sufficiently severe to support a claim of constructive discharge. See Jurgens, 903 F.3d at 391 (discriminatory failure to promote alone "cannot reasonably be construed" as creating sufficient embarrassment or humiliation to give rise to constructive discharge); Mayes v. Office Depot, Inc., 292 F. Supp. 2d 878, 895 (W.D. La. 2003) (finding no constructive discharge where employee was humiliated by employer's repeated failure to promote her, and noting "[n]either a discriminatory failure to promote nor mere humiliation can support a case of constructive discharge").

[12] Complaint, Rec. Doc. 1, p. 5, ¶ XIII.

[13] Complaint, Rec. Doc. 1, p. 5, ¶ XV.

allegations do not amount to harassment of greater severity or more systemic pervasiveness than is required to maintain a hostile work environment claim. Landgraf, 968 F.2d at 430.[14]

Courts in this circuit have refused to find constructive discharge under circumstances far more egregious than those alleged here. See Stover v. Hattiesburg Pub. Sch. Dist., 549 F.3d 985, 991-92 (5th Cir. 2008) (employee's allegations that she was not provided the same career development opportunities, her complaints of discrimination were not investigated, her supervisor "exhibited anger, violence, shouting, and waved his arms" at her, and that she was excluded from prestigious retreats and other meetings were not sufficient to support a claim of constructive discharge); Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 440 (5th Cir. 2005) (employee's assertions that she

---

[14] See also Simmons v. Navy Fed. Credit Union, No. C-10-14, 2011 WL 2078528, at *4 (S.D. Tex. May 26, 2011) (employee failed to state a claim for constructive discharge under the ADEA where she did not allege that she was ever demoted, that her salary was reduced, that she was assigned to perform menial work, that she was harassed or humiliated by her employer, or that she suffered any other severe and pervasive harassment; only age-related allegations were that supervisor made comments regarding the need for "new and fresh ideas" and "began assigning [the employee's] duties to younger, less experienced employees," which did not rise to the level of circumstances so intolerable that a reasonable person would feel compelled to resign); Williams v. Potter, No. SA-09-CV-1023, 2010 WL 2838351, at *4 (W.D. Tex. July 19, 2010) (employee did not state constructive discharge claim where he failed to allege that he was subject to essentially any of the recognized "aggravating factors" and other conduct alleged did not "rise to the level of badgering, harassment, or humiliation calculated to encourage retirement").

was treated "rudely and with general hatefulness," that a man she did not know began taking pictures of her, that a meritless racial harassment charge was brought against her, and that a new supervisor was overheard to state that he would receive a bonus if he ran her off did not constitute "aggravating factors that would render the harassment so intolerable that a reasonable employee would feel compelled to resign"); Brown v. Bunge Corp., 207 F.3d 776, 782-83 (5th Cir. 2000) (no constructive discharge even where employee was demoted and given fewer job responsibilities); McCann v. Litton Sys., Inc., 986 F.2d 946, 952 (5th Cir. 1993) (finding no constructive discharge when the plaintiff was given the option – in the midst of a company-wide workforce reduction – of either retiring or transferring to a new and "not well defined" position at a 12% reduction in pay, under the supervision of a man half his age); Vaughan v. Pool Offshore Co., 683 F.2d 922, 926 (5th Cir.1982) (African-American employee was not constructively discharged on the basis of pranks, tricks, heavy-handed humor, and crude racial language).  In short, a reasonable person would not feel compelled to resign based on the conduct Plaintiff has alleged.

    Additionally, Plaintiff's complaint gives no indication that she ever once complained to anyone at Harrah's regarding the conditions that she now alleges were intolerable, thereby depriving Harrah's of any reasonable chance to address her

concerns. The Fifth Circuit has recognized that, "[i]n the constructive discharge context, . . . 'part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast.'" Aryain v. Wal-Mart Stores Tex., L.P., 534 F.3d 473, 481 (5th Cir. 2008) (quoting Dornhecker v. Malibu Grand Prix Corp., 828 F.2d 307, 310 (5th Cir. 1987)); see also Thompson v. Naphcare, Inc., 117 F. App'x 317, 325 (5th Cir. 2004) (unpublished table decision) (stating that "an employee who resigns without affording the employer a reasonable opportunity to address her concerns has not been constructively discharged").

Instead, under the facts Plaintiff alleges, within three days of the September 10, 2010 lunch event, before she ever returned from maternity leave and with essentially no further investigation or inquiry, Plaintiff submitted a letter of resignation indicating that she was pursuing a "new opportunity."[15] Courts in this circuit have declined to find constructive discharge in similar circumstances. See, e.g., Aryain, 534 F.3d at 482 (employee could not maintain constructive discharge claim after being transferred to a new department and resigning 20 days later without ever raising complaints regarding negative treatment she allegedly endured in new apartment and without giving her employer an opportunity to improve the

---

[15] Complaint, Rec. Doc. 1, p. 8, ¶ XXI.

situation); <u>Jones v. Willy, P.C.</u>, No. 08-3404 , 2010 WL 723632, at *8 (S.D. Tex. Mar. 1, 2010) (finding no constructive discharge where plaintiff resigned "only a few days" after employer threatened to fire him and stopped speaking to him and noting that "[a] reasonable employee would, at the very least, seek to remedy the situation with the employer before resigning"); <u>Gillum v. ICF Emergency Mgmt. Servs., LLC</u>, No. 08-314, 2010 WL 370338, at *6 (M.D. La. Jan. 29, 2010) (no constructive discharge where employee resigned "only days" after his employer changed his job duties, but "before he even experienced an actual change in his job duties and without allowing [his employer] notice and an opportunity to resolve any working conditions that he might have considered intolerable"); <u>McGarry v. Univ. of Miss. Med. Ctr.</u>, No. 05-792, 2008 WL 3822447, *8 (S.D. Miss., Aug. 12, 2008) (concluding that plaintiff's allegations did "not rise to the level required to maintain a constructive discharge claim" where she had been transferred to a different floor but resigned "without ever reporting" to the new department); <u>Taylor v. Nickels and Dimes, Inc.</u>, No. 00-1461, 2002 WL 1827659, at *4 (N.D. Tex. Aug. 7, 2002), <u>aff'd</u>, 71 F. App'x 440 (5th Cir. 2003) (no constructive discharge claim where plaintiff walked off the job without informing anyone that her supervisor had allegedly threatened her because she "believed" that her employer would fire or mistreat her).  In sum, because the Court finds that

Plaintiff has failed to allege working conditions that would compel a reasonable employee to resign, Harrah's motion will be granted.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Harrah's Partial Motion to Dismiss **(Rec. Doc. 6)** is hereby **GRANTED**, and counts one and three of Plaintiff's complaint are hereby **DISMISSED** with prejudice.

New Orleans, Louisiana this 1st day of August, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT COURT